

**Littler Mendelson, P.C.**
One Newark Center
8th Floor
Newark, NJ  07102

Peter Ajalat
Office Managing Shareholder

Marlie P. Blaise
973.848.4756 direct
973.848.4700 main
mblaise@littler.com

August 16, 2023

**VIA ECF**

Hon. Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    **Samaka Ndege v. Skanska USA Building Inc.**
       **Civil No. 22-CV-04420 (JGK)(GWG)**

Dear Judge Gorenstein:

This firm represents Defendant Skanska USA Building Inc. ("Skanska" or "Defendant") in the above-referenced matter.  Defendant submits this letter in response to Plaintiff's August 7, 2023, letter requesting a pre-motion conference to compel Defendant to produce: 1) documents related to unidentified comparators; and 2) documents related to employee promotions, despite the fact that Plaintiff has never alleged or pleaded that she applied for any available positions with Defendant. Plaintiff's overbroad request for such documents should be denied, since they are not proportional nor relevant to the needs of this case.

I.    **Plaintiff's Employment With Skanska**

Skanska is a project development and construction group that provides construction services to the building construction sector in the United States. Skanska's work is project specific; thus, its employees (who range from project managers to engineers to document controllers), are assigned to work on specific construction projects.

On January 2, 2017, Plaintiff was granted an E-3 Visa (unique to Australian Nationals) and began employment with Skanska as a Senior Project Engineer in New York.  Plaintiff was the only employee that Skanska had on an E-3 Visa in the U.S.  She was assigned to the Moynihan Train Hall project (the "Project").[1]

---

[1] The Project involved creating: a) a new sky-lit train hall on the concourse level of the Farley Building, b) back-of-house support space for Amtrak and Long Island Rail Road, the two anchor rail tenants, including ticketing, baggage areas and waiting areas, c) loading access for the rail tenants and for the USPS which will continue to occupy space in the Farley Building, d) exterior restoration, and e) systems and infrastructure improvements.

Honorable Gabriel W. Gorenstein
August 16, 2023
Page 2

In mid-2020 in the height of the Covid-19 pandemic, like many other employers, Skanska laid off and/or furloughed *hundreds* of New York employees, both U.S.-citizens and Visa holders alike.

Importantly and key to this case, Skanska also **ceased** the initiation of **all** types of Visa applications and renewals for its employees and applicants in light of the changes and uncertainties surrounding the labor market, particularly where Skanska was unable to certify to the U.S. government as part of such applications, that no other skilled U.S. citizen or Green Card holder was available to perform the role, because they had equally skilled U.S. citizens and Green Card holders on furlough they had nowhere to place.

Consequently, when Plaintiff's E-3 Visa was due for renewal in mid-2020, consistent with how it treated other employees on Visas, Skanska did not sponsor Plaintiff for a Visa renewal, and she separated from the Company in August 2020. Plaintiff now brings a Complaint against Skanska for alleged discrimination and retaliation based on her race and gender and a failure to accommodate claim.

## II.  Skanska Has Already Consented to Allow this Court to Review Emails In Camera

On July 12, 2023, Skanska consented to Plaintiff's request to allow this Court to review in camera emails between its in-house counsel and others at Skanska related to Plaintiff's sole complaint.

## III.  Plaintiff's Request for Comparator Information Should Be Denied Because Plaintiff Had No Similarly Situated Comparator And Has Not Identified Any

In Plaintiff's First Request for Production of Document Numbers 29-38, 43-44, 46, 50, 53-54, 57, 62, 65, 68-69, 87-88, and 91-92, Plaintiff vaguely requested various documents related to (mostly unidentified) employees, who allegedly received more favorable treatment than her, regardless of whether they worked on the Project or not, regardless of whether they even worked in the City of New York or not, regardless of their Visa status, and regardless of whether they held the same role as her.

A sample of Plaintiff's overly broad document requests for alleged "comparator" information is set forth below as follows:

> **Request Number 29**: Documents sufficient to show all employees who held the title of Project Engineer at any point during the period of Plaintiff's employment, and documents sufficient to show when these employees obtained the title of Project Engineer.
> **Request Number 53**: All documents, communications, and/or ESI concerning all New York employees of Defendant who were promoted in or about March 2019 as averred in Paragraphs 55-56 of the Complaint.
> **Request Number 57**: All documents, communications, and/or ESI concerning Defendant's employees, besides Plaintiff, who were placed on a Performance Improvement Plan, during the period of Plaintiff's employment.

In response to Plaintiff's overbroad requests, Defendant objected on various grounds, but most importantly, Defendant objected on the ground that Plaintiff's requests sought documents that were

Honorable Gabriel W. Gorenstein
August 16, 2023
Page 3

not reasonably proportional to the needs of the case.  Defendant further objected on the ground that the requests were not limited in scope, particularly, where Plaintiff's allegations arose on a discrete identifiable location.

On May 5, 2023, and July 11, 2023, defense counsel met with Plaintiff's counsel to discuss the parties' outstanding discovery deficiencies, including Plaintiff's request for comparator information. During the May 5, 2023, conference call, defense counsel inquired with Plaintiff's counsel as to who Plaintiff believed she was being compared to.  ***Plaintiff could not identify a comparator, but continued to assert all Skanska engineers who shared her job title are similarly situated***, and thus qualify as comparators.  Defense counsel explained to Plaintiff's counsel that Plaintiff was the *only* Skanska employee on an E-3 Visa in the whole U.S.; thus, there were no comparators to the extent her Visa expired and was not renewed.  Plaintiff disagreed.  This was absurd – E-3 Visa status aside, Skanska has *hundreds* of Project Engineers in the U.S.  A Skanska Project Engineer in Seattle with 20 years' experience is not a comparator to Plaintiff and Skanska should not be required (at great burden and expense) to gather records related to such a person.

In an effort to assist Plaintiff with narrowing her request, Defendant informed Plaintiff that as a start, comparable employees would be those who shared Plaintiff's job title ***on the Project*** *– which was approximately (fifteen) 15 Project Engineers just on the Project alone*.

Plaintiff refused.  On June 14, 2023, Plaintiff stated that in an effort to compromise, she was willing to narrow the scope of comparators to employees who shared Plaintiff's job title in New York City, even on different projects. ***New York City alone would be approximately 100 people***.  Regardless of this continued overbroad request, Plaintiff still failed to come forward with the identities of individuals who she contended would qualify as a comparator, including during the July 11, 2023, meet and confer.

The law is clear that Plaintiff cannot engage in a fishing expedition – she has a burden to identify proper comparators. The Second Circuit has **dismissed** on motion, disparate treatment claims "where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.*, who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants." *Blige v. City of N.Y.*, 2017 WL 498580 at *9 (S.D.N.Y. Jan. 19, 2017). *See also Sosa v. NYC Dep't. of Educ.*, 368 F.Supp.3d 489, 514 (E.D.N.Y. Mar. 25, 2019) ("it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated") (citing *Henry v. NYC Health & Hosp. Corp.*, 18 F.Supp.3d 396, 412 (S.D.N.Y. Mar. 10, 2014) (dismissing plaintiff's disparate treatment claims because the allegations were conclusory and lacked factual allegations indicating [how] Caucasian employees were similarly situated to plaintiff)) (quotation omitted).

Furthermore, for those cases that withstand the dismissal stage, the case law is clear that for an individual to be a comparator, he or she must be similarly situated. *See, e.g., Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 64 (2d Cir.1997) ("[t]o be similarly situated, the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects."). *See also*

Honorable Gabriel W. Gorenstein
August 16, 2023
Page 4

*Conway v. Microsoft Corp.*, 414 F. Supp.2d 450, 464 (S.D.N.Y. Feb. 14, 2006) (stating that part of the "'all material respects' standard is requirement that there not exist any differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it") (citing *Pierce v. Netzel*, 2004 WL 1055959, at *13 (W.D.N.Y. May 10, 2004) (quotation omitted).

Here, Plaintiff broadly requests that Defendant expand its search for documents related to all engineers who held Plaintiff's job title in New York City during the time of her employment, but such broad conclusory request fails to clarify how such unknown individuals are similarly situated to Plaintiff. Notably, Defendant has explained to Plaintiff various times that she was the only Engineer on the Project with an E-3 Visa and was terminated because Skanska could not renew her Visa (and did not renew any Visas) during the height of Covid-19 pandemic. As such, the 'proper' comparators that Plaintiff seeks to compare herself to simply do not exist. Her request should be denied.

**IV.    Plaintiff's Request For Documents Related To "Promoted" Employees Should Be Denied Because Plaintiff Never Applied For A Promotion And Does Not Allege That She Did**

Plaintiff seeks discovery to advance her false narrative that something insidious was happening when her co-workers were promoted and she was not, but ***Skanska has no record of Plaintiff ever applying for any promotional opportunity*** and, <u>to this day</u>, Plaintiff has never identified any open promotional position at Skanska to which she applied. For example, a 30-second Google search even today would reveal multiple open Project Manager and Assistant Project Manager positions (positions that Plaintiff's counsel has claimed in meet and confer that Plaintiff wanted). But Plaintiff <u>never applied</u> for any such posted positions during her entire employment with Skanska.

Notably, all of the cases cited by Plaintiff in her August 7, 2023 letter are <u>vastly distinguishable</u>, since the plaintiffs in those cases ***actually applied*** for available promotions/positions, ***unlike Plaintiff***.

In her extraordinarily overbroad requests, Plaintiff seeks various documents related to "all employee promotions" made in March 2018, "all New York employees" promotions in March of 2019, and "personnel file[s]" of all New York employees who were promoted in June 2020. Defendant objected on the grounds that such requests were not only overbroad and unproportional to the needs of the case, but they also invaded third party privacy rights who are not parties to this action.

During the parties meet and confer, defense counsel further explained to Plaintiff's counsel that since Plaintiff never applied for any available positions, she was not entitled to the requested documents, and therefore, did not have a failure to promote claim.

The Second Circuit is clear that, in order to maintain a failure to promote claim, a <u>*plaintiff must show*</u> that she "applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (quotation omitted) (emphasis added).

Honorable Gabriel W. Gorenstein
August 16, 2023
Page 5

When defense counsel asked Plaintiff's counsel what positions Plaintiff alleges that she applied to and was denied for, Plaintiff's counsel only generically argued that Plaintiff was passed up for promotions over her male colleagues, without identifying the roles involved.[2]

This sort of generic allegation is **rejected** by the Second Circuit as insufficient to support a claim of discriminatory failure to promote. *See Rivera v. JP Morgan Chase*, 815 F. App'x. 603, 606 (2d Cir. 2020) (affirming dismissal of complaint where plaintiff generally alleged that he requested promotions and was denied on the basis of race). *See also Amanda Nicole Olascoaga Cruz v. Amazon.com Services LLC*, No. 21-CV-03092-(LDH) (VMS) (E.D.N.Y. Mar. 27, 2023) (dismissing plaintiff's complaint after she merely alleged that she sought out promotions "rather than alle[ging] specific positions for which she applied and the qualifications required therefore . . .").

Hence, notwithstanding the privacy and other objections asserted by Skanska to Plaintiff's overbroad requests related to "promoted" employees, Skanska should not be burdened with pulling hundreds of pages of documents related to persons who were "promoted" into positions that Plaintiff never applied for.

Skanska respectfully requests that Plaintiff's requested relief from this Court be denied.

We thank you for your time and attention to this matter.

Respectfully submitted,

*/s/ Marlie P. Blaise*

Marlie P. Blaise

cc:    Amber M. Spataro, Esq.

All counsel of record via ECF

---

[2] The only male colleague identified by Plaintiff in her Complaint as being "promoted" during her tenure was Radoslaw Sawicki, who was promoted in 2019 from Project Engineer to Senior Project Engineer (which was the same title as Plaintiff). Sawicki – who was not working for Skanska on any kind of Visa - was subsequently promoted *after* the decision not to renew Plaintiff's (and others') Visa and her termination, so would not be comparable to Plaintiff because she had already been terminated.